IN THE CIRCUIT COURT, SEVENTH JUDICIAL CIRCUIT,
IN AND FOR VOLUSIA COUNTY, FLORIDA

THE COMMERCIAL BANCORP, INC.,
D/B/A EAST COAST COMMUNITY BANK,
a Florida Corporation,

    Plaintiff,

vs.

PROGRESSIVE CASUALTY INSURANCE
COMPANY, a corporation doing business in
the State of Florida,

    Defendant.

CASE NO.: 2009-33261-CICI
DIVISION: 32

ORIGINAL OF THIS DOCUMENT
FILED IN THE OFFICE OF THE
CLERK OF THE CIRCUIT COURT,
VOLUSIA COUNTY, FLORIDA

AUG 0 7 2009

/s/ L. Adams, Sr.

## COMPLAINT

The Plaintiff, The Commercial Bancorp, Inc. d/b/a East Coast Community Bank ("ECCB or the Bank ") by and through their undersigned counsel, sues Defendant, Progressive Casualty Insurance Company ("Progressive") and says as follows:

1. At all times material to this Complaint, Plaintiff ECCB, was a Florida corporation, authorized to do and doing business in the State of Florida, with its principal place of business in Volusia County, Florida.

2. At all times material to this Complaint, Defendant, Progressive, was an Ohio corporation, authorized to do and doing business in the State of Florida, with its principal place of business at 6300 Wilson Mills Road, Mayfield Village, Ohio.

3. All conditions precedent have occurred or been waived.

4. At all times material to this Complaint, the Bank had contracted with Progressive as its insurance company, to provide directors and officers insurance coverage under policy number 0000555-01.

5. A claim was made against the Bank for indemnity by Mr. Campbell and a lawsuit (the "Complaint") was filed against the Bank by Mr. Campbell, a former officer and director of the Bank during the time periods covered by the policies referenced in paragraph 4 above.  (A copy of the lawsuit is attached as Exhibit "A".)

6.    ECCB requested that Progressive provide Mr. Campbell a defense and liability coverage pursuant to the policies references in paragraphs 4 above.

7.    Progressive denied coverage for the claim and has refused to provide a defense as stated in its letter dated May 15, 2007.  (See Exhibit "B" attached hereto.)

WHEREFORE, ECCB seeks damages against Progressive for all legal expenses and costs which they have and will incur, including coverage for any damages incurred under the liability limits of the subject policies.

## COUNT I - DECLARATORY RELIEF

8.    This is an action for declaratory judgment and supplemental relief.

9.  .  ECCB restates and realleges the allegations contained in Paragraphs 1-7.

10.    As stated in paragraph 4, ECCB had insurance contracts with Progressive providing the directors and officers insurance to ECCB under certain terms and conditions of the policy.

11.    Coverage exists under the above-referenced insurance policy for the allegations contained in the claims and complaint and Progressive should provide a defense and coverage for any damages.

12.    Progressive has refused to provide a defense or liability coverage.

13. ECCB has to pay the undersigned for its defense, and has had to pay damages to Gary Campbell.

WHEREFORE, the Bank requests this Court to declare the rights and responsibilities of the parties with respect to coverage of the subject claim; enter judgment for the Bank for its attorney fees; and such further relief as this Court deems appropriate.

## COUNT II - BREACH OF CONTRACT

14.    This is an action for damages that exceed $15,000.00.

15.    The Bank restates and realleges the allegations contained in Paragraphs 1-7.

16.    As stated in paragraph 4, insurance contracts existed between the parties providing directors and officers insurance to the Bank under certain terms and conditions of the policies.

17.    A claim for indemnity was brought by a former officer and director of the Bank and Progressive has failed or refused to provide a defense and coverage for liability.

18.   The Bank paid all premiums when due under the subject policy.

19.   The actions complained of against the Bank officer occurred during the coverage period under the subject policies and all allegations are covered under the terms of the policies.

20.   Progressive has breached the subject insurance contracts by failing to provide insurance for the indemnity claim to the Bank.

21.   The Bank has been damaged by incurring expenses for legal representation and payments made to its former officer to reimburse him for legal defense costs.

22.   ECCB has had to expend attorney's fees in this action and will seek to recover same as a prevailing party under the contract.

WHEREFORE, ECCB requests damages that reimburse the Bank's legal fees and payments it has made to Mr. Campbell for his legal fees, prejudgment interest and such further relief as this Court deems appropriate.  ECCB requests trial by jury.

Dated this 2th day of August, 2009.

CROTTY & BARTLETT, P.A.

Laurence H. Bartlett
Florida Bar No.: 287989
Post Office Box 9547
Daytona Beach, Florida 32120-9547
Telephone: 386-274-6395
Facsimile:  386-274-7608
Attorneys for Plaintiff

# EXHIBIT A

☒003/010

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT,
IN AND FOR VOLUSIA COUNTY, FLORIDA

Case No.: 2007-31108-CICI
Division:  32

GARY G. CAMPBELL,
an individual,

    Plaintiff,

v.

EAST COAST COMMUNITY BANK,
a Florida corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, GARY G. CAMPBELL, an individual ("Campbell"), by and through his

undersigned attorneys, hereby sues Defendant, EAST COST COMMUNITY BANK, a Florida

corporation (the "Bank"), and as grounds states as follows:

### GENERAL ALLEGATIONS

*Venue and Jurisdiction*

1.    Campbell is a resident of Volusia County, Florida.

2.    East Coast Community Bank is a Florida corporation doing business in Volusia

County, Florida.

3.    This is a breach of contract action for damages that exceed $15,000.00, exclusive

of interest and costs.

4.    Venue is appropriate in Volusia County pursuant to § 47.010, Fla. Stat. (2006), as

that is the county where the cause of action accrued.

5.      Campbell has complied with all conditions precedent to the institution of this action and the same have occurred or been waived by Defendant.

6.      Campbell has engaged the services of Holland & Knight, LLP, to prosecute this action on his behalf and is obligated to pay said firm a reasonable fee.

7.      Campbell is entitled to recover any such fees from Defendant pursuant to the terms of the Bank's By-Laws (as hereinafter defined).

*Factual Allegations*

8.      Campbell formerly served as President of the Commercial Bank of Volusia County, a Florida corporation.

9.      On or about July 1, 2005, Commercial Bank of Volusia County changed its name to East Coast Community Bank.

10.     As President of the Bank, Campbell was subject to its corporate by-laws (the "By-Laws"). A true and correct copy of Article IX of the Bank's By-Laws is attached hereto as Exhibit "A."

11.     On or about February 24, 2004, FDIC Atlanta Regional Director Mark Schmidt notified Campbell by letter that he planned to recommend the FDIC initiate formal administrative proceedings against him pursuant to section 8(e) and 8(i)(2)(B) of the Federal Deposit Insurance Act for his actions related to a loan approval and charge off of a mortgage while acting as President and member of the Bank's Board of Directors (the "FDIC Action").

12.     As a result of the FDIC Action, Campbell engaged the services of Stephens B. Woodrough, Esq., of The Banking Law Firm to represent him regarding the FDIC Action.

2

@005/010

13.    On or about March 8, 2004, Campbell first made demand against the Bank for indemnification pursuant to Article IX of the Bank's Bylaws for the fees and costs associated with his defense against the FDIC Action.

14.    On or about May 21, 2004, the Bank notified Campbell it would not indemnify him for any fees or costs related to the FDIC Action.

15.    Pursuant to Article IX of the Bank's Bylaws, the Bank is required to indemnify any person who was or is made a party or is threatened to be made party to an action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact he or she is or was a director or officer of the Bank.  Further, pursuant to Article IX of the Bank's Bylaws, the right to indemnification is a contract right and continues to a person who as ceased to be an officer or director.

16.    Thereafter, following negotiations, on or about August 10, 2005, the Bank tendered $60,000.00 to Campbell as payment for indemnification of his attorney's fees.

17.    After giving credit for all indemnification payments by the Bank, there still remains an outstanding balance of fees due to Stephens B. Woodrough in association with the Campbell's defense of the FDIC Action of $16,737.50.

18.    In addition, Campbell has and will continue to incur attorneys' fees from Holland & Knight LLP on account of pursuing payment from the Bank for fees and costs associated with the FDIC Action and this lawsuit.

19.    Campbell has also incurred personal costs and expenses associated with his pursuit of fees and costs from the Bank.

20.    This is an for breach of contract for the Bank's failure to indemnify pursuant to the terms and conditions of its By-Laws.

3

21.   The Bank materially breached its obligations under Article IX of its By-Laws by failing to indemnify Campbell for attorneys' fees and costs incurred as a result of the FDIC Action.

22.   As a result of the Bank's breach, Campbell has suffered damages.

WHEREFORE, Plaintiff, Gary G. Campbell, demands judgment against East Coast Community Bank for damages, together with interest, costs, attorneys' fees, and any such further relief this Court deems just and appropriate.

BRIAN A. McDOWELL, ESQ.
Florida Bar No.: 765521
EDWARD M. FITZGERALD, ESQ.
Florida Bar No. 0010391
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Suite 2600
P. O. Box 1526 (ZIP: 32802-1526)
Orlando, Florida 32801
Telephone: (407) 425-8500
Facsimile: (407) 244-5288
ATTORNEYS FOR PLAINTIFF

# 4528800_v1

## ARTICLE VIII

### FISCAL YEAR

The Bank's fiscal year end date shall be December 31.

## ARTICLE IX

### INDEMNIFICATION

Section 1 - *GENERAL*. The Bank shall indemnify its officers, directors, employees but not its agents unless specifically approved in writing by the Board of Directors to the fullest extent authorized by Section 607.0850 of the Florida Business Bank Act as it now exists or may hereafter be amended (the "FBCA") but, in the case of any such amendment, only to the extent that such amendment permits the Bank to provide broader indemnification rights than said law permitted the Bank to provide prior to such amendment. This includes, but is not limited to, any person who was or is made a party or is threatened to be made a party to any action, suit or proceeding, whether civil, criminal, administrative or investigative ("Proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Bank or is or was serving at the request of the Bank as a director, officer, employee or agent of another Bank or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such Proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, reasonably incurred or suffered by such person in connection therewith. Such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Bank shall indemnify any such

15

EXHIBIT "A"

@008/010

person seeking indemnity in connection with an action, suit or Proceeding (or part thereof) initiated by such person only if such action, suit or Proceeding (or part thereof) was authorized by the Board of Directors of the Bank. Such right shall be a contract right and shall include the right to be paid by the Bank for all expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, the payment of such expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of such proceeding, shall be made only upon delivery to the Bank of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it should be determined ultimately that such director or officer is not entitled to be indemnified under this Article or otherwise.

*Section 2* - Failure to Pay Claim: If a claim under Section 1 of this Article is not paid in full by the Bank within 90 days after a written claim has been received by the Bank, the claimant may at any time thereafter bring suit against the Bank to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any, has been tendered to the Bank) that the claimant has not met the standards of conduct which make it permissible under the FBCA for the Bank to indemnify the claimant for the amount claimed, but the burden of proving such defense shall be on the Bank. Neither the failure of the Bank (including its Board of Directors, independent legal counsel, or its shareholders) to have made a determination prior to the

16

05/16/2007 15:00 FAX                                                                    @ 009/010

commencement of such action that indemnification of the claimant is proper in the circumstances, because he or she has met the applicable standard of conduct set forth in the FBCA, nor an actual determination by the Bank (including its Board of Directors, independent legal counsel, or its shareholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that claimant has not met the applicable standard of conduct.

Section 3 – Other Rights:  The rights conferred on any individual by Sections 1 and 2 of this Article shall not be exclusive of any other right which such individual may have or hereafter acquire under any statute, provision of these Bylaws of the Bank, agreement, vote of shareholders or Disinterested Directors or otherwise.

Section 4 – Insurance:  The Bank may maintain insurance, at its expense, to protect itself and any such director, officer, employee or agent of the Bank or another Bank, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Bank would have the power to indemnify such person against such expense, liability or loss under the FBCA.

Section 5 – Personal Liability:  A director of the Bank shall not be personally liable to the Bank or its shareholders for monetary damages for any statement, vote, decision or failure to act regarding corporate management or policy except as provided in the FBCA or other applicable state or Federal law governing the Bank.  If the FBCA is amended after adoption of these Bylaws and such amendment further eliminates or limits the personal liability of directors, then the liability of a director of the Bank shall be eliminated or limited to the fullest extent permitted by the FBCA, as so amended.

17

05/18/2007 15:00 FAX                                                      @010/010

Any repeal or modification of the foregoing paragraph by the shareholders or the Bank shall not adversely affect any right or protection of a director of the Bank existing at the time of such repeal or modification.

## ARTICLE X

### AMENDMENTS

These Bylaws may be altered, amended or repealed in a manner consistent with the laws of the State of Florida at any time by a majority of the full Board of Directors or by a majority of the votes cast by the stockholders of the Bank at any legal meeting.  Only the stockholders may alter, amend or repeal a Bylaw previously adopted by the stockholders.

## ARTICLE XI

### SEVERABILITY

Each provision of these Bylaws shall be separable from any and all other provisions of these Bylaws, and if any such provision shall be adjudged to be invalid or unenforceable, such validity or unenforceability shall not affect any other provision hereof or the powers granted by the Articles of Incorporation or Bylaws.

These Bylaws have been adopted by the Board of Directors as the Bylaws of the Bank on this 25 day of September, 1997, and shall be effective as of said date.

By: _____
Gary G. Campbell
President

18

# EXHIBIT B



May 15, 2007


Laurence H. Bartlett, Esq.
Crotty, Bartlett & Kelly, P.A.
P.O. Box 9547
Daytona Beach, Fl 32120-9547

    Re:    Matter:    *William J. Nixon etc. v. James R. Peacock, Sr., et al.*
             Insured:    East Coast Community Bank (The Commercial Bank of
                                Volusia County)
             Policy No.:    0000555-01
             Claim No.:    03 1219234

Dear Mr. Bartlett:

        When we spoke on December 21, 2007, you advised that you would be sending me a set of documents including a recently amended complaint. At that time you asked that I take a fresh look at coverage with regard to the several different types of legal expenses triggered by Mr. Nixon's claims and allegations against the Bank, and against former directors Campbell and Peacock.

        You provided me, under cover of your letter dated May 1, 2007, a copy of the Third Amended Complaint, among other documents. Also, on May 3, 2007, you informed me by telephone that the attorney representing Mr. Nixon had agreed to dismiss with prejudice his client's case, in exchange for an agreement that no party would seek to recover for their respective costs and attorneys fees from Mr. Nixon. While the case has not been dismissed yet on that basis, you expressed confidence that such a deal would be finalized.

        Your letter dated May 1, 2007 requests that Progressive reimburse the Bank for (a) attorneys fees of Bill Hathaway incurred by Mr. Campbell in connection with his criminal defense in connection with the state court criminal action, in the amount of $12,493.10; and (b) attorneys fees of the firm of Rice & Rose incurred by Mr. Campbell in connection with the defense of the Nixon matter, in the amount of $7,359.60.

        I have had an opportunity to review the coverage positions set forth in the letters of Kate Vierkorn dated March 17, 2004; August 30, 2004; and August 9, 2005 (collectively, the "Letters"). I will discuss the several coverage issues raised by the Nixon matter each in turn.

The Progressive Group of Insurance Companies

5920 Landerbrook Drive, PLG-L21   •   Mayfield Heights, Ohio 44124   •   phone: (800) 274-5222   •   fax: (800) 456-6590   •   bank.renewnow.com

Laurence Bartlett, Esq.
May 15, 2007
Page 2 of 5

**A.    General Background**

    **1.    Overview**

James Peacock was the Chairman of the Board of Directors of the Bank until February, 2001. Gary Campbell was President of the Bank until approximately May, 2003. The Plaintiff, William J. Nixon, II, is a shareholder of the Bank, and had an interest in a closely held business known as Precision Dispenser, Inc. Precision Dispenser was a borrower of the Bank's. Nixon alleges that a deal was struck between Nixon, on the one hand, and Peacock and related persons and entities, on the other hand, relating to Precision Dispenser. (The "Peacock Parties" are James R. Peacock, Sr., Myrtice Peacock, his wife, each individually and as Trustees of the James R. Peacock, Sr. Revocable Trust, along with other persons that are not identified.) Nixon claims that Peacock agreed to assume certain debts of the business, including a second mortgage. Nixon also claims that Peacock made misrepresentations regarding whether a letter of credit from the Bank would issue in connection with this arrangement.

    **2.    Criminal Case**

A criminal case was filed against both Peacock and Campbell in Volusia County, Florida. The case number was CRC0331794CFAES. Campbell was charged with two separate counts of "Principal to Grand Theft over $20,000."

On or about August 19, 2006, you informed me that the criminal charges against Mr. Campbell were dismissed.

    **3.    Civil Litigation (the Nixon Case)**

The allegations in the First Amended Complaint have previously been analyzed by Kate Vierkorn in her letter dated August 30, 2004 (a copy of which was provided to you by facsimile on September 16, 2004).

Progressive was never provided with a copy of the Second Amended Complaint, nor were we notified of its existence, prior to the time when the Plaintiff, Mr. Nixon, filed the Third Amended Complaint. I only received from you the Third Amended Complaint on May 2, 2005, which was the day before you informed me that the case had effectively been settled (though it has not yet been dismissed).

The allegations of the Third Amended Complaint include causes of action brought by William Nixon against James Peacock, Myrtle Peacock, Gary Campbell, and the Commercial Bank of Volusia County (now known as East Coast Community Bank).

Count One is an action for theft under Chapter 812 of the Florida Statutes, and is brought solely against James Peacock.

Laurence Bartlett, Esq.
May 15, 2007
Page 3 of 5

Count Two is an action for theft under Chapter 812 of the Florida Statutes, and is brought against all the defendants (including Peacock and Campbell) except the Bank. As to Campbell, this Count alleges that he misused his position as President of the Bank to assist Peacock in obtaining Precision Dispenser, and in using a letter of credit, held in trust for the benefit of the Plaintiff, "with the intent to either temporarily or permanently deprive the Plaintiff of his right to the real estate, business and letter of credit or a benefit therefrom." He further alleges that Campbell "appropriated the funds made available by the letter of credit to his own use or to the use" of Peacock, and by assisting Peacock, who was then the Chairman of the Board, Campbell received a benefit – namely, by maintaining his position as President of the Bank. Plaintiff further alleges that Campbell, using his position with the Bank, "exercised control over and made an unauthorized use, disposition or transfer of the property and letter of credit by willfully misrepresenting the future availability of the funds" so as to deprive Plaintiff of his right to the real estate, business or monetary compensation, all directly benefiting the Peacock Parties.

Count Three, brought against the Bank, purports to be a stockholder derivative action. He asserts standing as a shareholder at all relevant times, and further states that as a bank customer, his "financial records were available to and accessed by Peacock, Campbell and the Bank's board." He demanded in writing that the bank institute an action on behalf of the Bank for the claims asserted in the Complaint, but the Bank wrongfully refused to pursue "all of its causes of action" against Peacock and/or Campbell, and possibly against other Bank directors. This refusal was wrongful, among other reasons, because Peacock and Campbell "knowingly, willfully and intentionally concealed from the board of directors" Peacock's "personal interest, acquisition and ownership in Precision Dispensers, Inc. and [in] Plaintiff Nixon's realty, or alternatively, Peacock and Campbell" did disclose these facts, but the Board failed to act to prohibit Peacock's "improper acquisition of Plaintiff Nixon's business, goodwill and realty." Plaintiff further complains that the refusal of the Board to bring an action on behalf of the Corporation against Defendants Peacock and Campbell was wrongful because "the deception by Defendants Peacock and Campbell caused the board of directors to approve the forgiveness of a second mortgage on the property of Precision Dispenser, Inc., previously owned by Plaintiff," and yet the Bank failed to take action against the wrongdoers Campbell and Peacock.

Plaintiff alleges that as a result of the wrongful refusal to pursue these claims, "the Corporation lost mortgaged funds and accumulated interest from its treasury, the value of the corporate stock became diminished, the corporation was investigated by the federal banking authorities, the Bank was placed on the verge of receivership, the Bank incurred substantial costs and attorney's fees, loss of profits, loss of investment opportunities and loss of deposits."

Laurence Bartlett, Esq.
May 15, 2007
Page 4 of 5

### B.   Discussion of Coverage

#### 1.   Criminal Proceeding

The Policy does not provide any coverage for Mr. Campbell's counsel fees and expenses incurred in defense of the criminal proceedings brought against him.

#### 2.   Nixon Civil Lawsuit

With respect to the civil lawsuit, Progressive issued a preliminary coverage analysis by letter dated August 30, 2004. In that letter, Progressive reserved its rights under the Policy, especially cautioning Mr. Campbell that the definition of "wrongful act" which is restricted to allegedly improper actions performed while acting solely in the capacity as an employee of the Bank, may preclude coverage.

By letter dated November 14, 2004, Ms. Vierkorn had previously written to Mr. Campbell and requested that he provide any "information establishing that [he was] acting solely in the capacity as an Insured Person when the actions alleged in the complaint transpired." Progressive has not been provided information to establish that Mr. Campbell was acting solely in his capacity as an Insured Person, and therefore, there is no coverage for his counsel fees and expenses relating to the Nixon litigation.

### C.   Previous Offer of Compromise

As you know, on August 9, 2005, Ms. Vierkorn made an offer of compromise to Mr. Campbell whereby Progressive would reimburse Mr. Campbell for $10,000 of his attorneys fees, in exchange for a full release under the D&O Policy. In connection with that offer, Progressive reserved all rights with respect to the payment of any additional fees. That offer has not been accepted by Mr. Campbell. Subsequently, you and I held some discussions about other options, but no agreement was ever reached between Progressive and the Bank. Rather than proceed along those lines, the Bank requested that we reconsider our earlier coverage determinations about the Nixon matter and Campbell's criminal defense. Other than the status reports you have provided, as well as the recent package containing certain pleadings such as the Third Amended Complaint, the Bank has not provided Progressive with any new information regarding the issue of coverage; nor has the Bank expressed any specific disagreement either with any of the statements of fact or legal conclusions drawn from those facts in Ms. Vierkorn's Letters.

Progressive persists in its coverage positions as previously communicated and as summarized herein.

However, Progressive remains interested in an agreement with the Bank whereby Progressive would reimburse the Bank for $10,000 of the amount of defense costs incurred by Mr. Campbell and for which the Bank has paid indemnity to him. In

Laurence Bartlett, Esq.
May 15, 2007
Page 5 of 5

exchange, the Bank would agree to indemnify Progressive in the event that Mr. Campbell seeks any further indemnity under the Policy for any amount of Loss, including but not limited to Defense Costs, related to this Claim. Please advise as to whether an agreement along these lines holds any interest for the Bank.

----

Please bear in mind that this coverage analysis is based upon the information, including unsubstantiated allegations, now known to Progressive. This analysis does not reflect an independent assessment of the merits of the allegations against the Insured. Progressive expressly reserves its right to revise this analysis. Toward that end, if I am, in your view, incorrect in any of my assumptions, or if there is additional pertinent information, please let me know. If you find my analysis flawed or unclear in any way, please call me.

This letter and any subsequent investigation are not to be construed as a waiver of any rights that Progressive has at law or otherwise. Progressive expressly reserves all rights in this matter.

If you have any questions, please call me at 1-800-274-5222.

Sincerely,

Terence Cawley
Senior Claims Attorney

MTC/gd

cc:    Laura Simmons, Esq.

W:\PLGCLAIMS\TCAWLEY\East Coast Community Bank\Bartlett ltr. 051007.doc